55 F.3d 1503
 Robert L. WENZ, Plaintiff-Appellant,
v.
MEMERY CRYSTAL, a partnership organized under the laws of
England and Wales; Peter M. Crystal; D. Harvey Rands;
Jonathan P. Davies; Douglas L. Robertson; Lesley A.
Gregory; Andrew G. St. J. Newman; David A. Connick; and
John Does 1 through 20, Defendants-Appellees.
 No. 94-1259.
 United States Court of Appeals,
Tenth Circuit.
 May 31, 1995.
 
 William R. Rapson of Robinson, Waters, O'Dorisio and Rapson, Denver, CO, for plaintiff-appellant.
 Joseph P. McMahon, Jr. (Neil Peck with him on the brief) Davis, Graham & Stubbs, Denver, CO, for defendants-appellees.
 Before SEYMOUR, Chief Circuit Judge, ANDERSON, Circuit Judge, and SHADUR,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiff, Robert L. Wenz, appeals the dismissal of his action against defendants, a London law firm and several of its partners, for lack of personal jurisdiction. We affirm.
 
 BACKGROUND
 
 2
 We note at the outset that when the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists. McNutt v. General Motors, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); Behagen v. Amateur Basketball Ass'n of the United States, 744 F.2d 731, 733 (10th Cir.1984), cert. denied, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). In the preliminary stages of litigation, however, the plaintiff's burden is light. Doe v. National Medical Servs., 974 F.2d 143, 145 (10th Cir.1992). Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists. Id.; FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir.1992); Behagen, 744 F.2d at 733. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." Id. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir.1987); Mitchell v. King, 537 F.2d 385, 386 (10th Cir.1976).
 
 
 3
 Moreover, because the district court's determination involves an application of the law to the facts as set forth in the affidavits and complaint as well as a determination of the legal sufficiency of plaintiff's jurisdictional allegations in light of the facts presented, we review the district court's decision de novo, and consider only those written submissions of the parties before the district court when it rendered the decision. Rambo v. American S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir.1988); Ten Mile Indus. Park, 810 F.2d at 1524. Therefore, our task is to determine whether the plaintiff's allegations, as supported by affidavits, make a prima facie showing of personal jurisdiction. Rambo, 839 F.2d at 1417.
 
 
 4
 In light of these guidelines, we consider the following relevant facts. The defendants in this action include the London, England law firm of Memery Crystal, six of its present partners, and one of its former partners, David Connick. The plaintiff, Robert L. Wenz, maintained a residence in London, England from August 1985 to July 1991, Wenz Aff. p 1, during which time he became a client of Memery Crystal and engaged in some business transactions with the assistance of David Connick. Crystal Aff. p 12; Connick Aff. pp 5-6; Wenz Aff. p 2. However, as of August 1991, Mr. Wenz became a resident of Colorado. Wenz Aff. p 2.
 
 
 5
 The instant suit arose from the following transaction. Sometime during October 1991 David Connick phoned from London to Mr. Wenz's residence in Colorado informing Wenz of an investment opportunity in London. Specifically, Connick told Wenz that certain London investors, Norris and Brooke-Taylor, were seeking funds for investment purposes. Wenz claims that Connick suggested that Wenz wire money to London to be placed in Wenz's client trust account at Memery Crystal. Wenz Aff. pp 3-4. Wenz then wired to Connick $200,000 from his bank in Colorado and $225,000 from Barclay's Bank. Id. p 5. Wenz alleges that it was "expressly or impliedly understood," however, that Memery Crystal would not disburse funds from his account without his authorization. Compl. p 12. Wenz claims that during October and November 1991 he and Connick continued to be in telephone contact regarding the transfer of funds, and that these phone calls were initiated by both Wenz and Connick. Wenz Aff. p 7.
 
 
 6
 Additionally, on approximately November 3, 1991, Wenz travelled to London where he met with Connick, Norris, and Brooke-Taylor, and engaged in discussions regarding the investors' plans. See Appellant's App. at 118; see also Wenz Aff. p 13; Connick Aff. p 13. Although the precise subject matter of their negotiations is disputed, Wenz alleges that at no time during the negotiations or otherwise did he instruct Connick or anyone at Memery Crystal to disburse or use the funds in his trust account. Wenz Aff. p 8; see Appellant's App. at 118. Despite the alleged lack of authorization, however, in approximately mid-November, Memery Crystal began withdrawing funds from Wenz's trust account. Compl. pp 13-16, 18, 19. Wenz claims he was unaware that the funds in his trust account had been depleted until mid-1992. Wenz Aff. p 12. At that time, and again in mid-1993, Wenz contacted Connick and Memery Crystal in an effort to recover the "funds that had been converted without [his] authorization." Id. When both of these attempts proved unsuccessful Wenz filed the present action. Id.[1]
 
 
 7
 According to the complaint, the sole dispute is over Memery Crystal's disbursal of funds from Wenz's client trust account located in London. The complaint alleges that Memery Crystal disbursed the funds without Wenz's "knowledge, consent or authorization," Compl. pp 12, 14, 16, 19, and that such wrongful disbursal constitutes negligence, breach of fiduciary duty, breach of contract, fraud, and theft. Id. pp 22, 26, 28-30, 32, 37. In response, the defendants filed a motion to dismiss for lack of personal jurisdiction claiming that they have not transacted business in Colorado, nor have they committed a tort in Colorado, and in any event the exercise of personal jurisdiction over them would violate the constitutional standard of due process. After hearing oral argument, the district court granted the motion and dismissed the case without prejudice. Appellant's App. at 148.
 
 DISCUSSION
 
 8
 Jurisdiction of the district court over a nonresident defendant in a suit based on diversity is determined by the law of the forum state. See Fed.R.Civ.P. 4(e); see also Omni Capital International v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); Rambo v. American S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir.1988). We must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law, Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir.1990), cert. denied, 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991), and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution. Far West Capital Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir.1995); Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op., 17 F.3d 1302, 1304-05 (10th Cir.1994); Rambo, 839 F.2d at 1416. This two-step analysis is consistent with the analytical approach Colorado courts have used to determine personal jurisdiction issues. Classic Auto Sales, Inc. v. Schocket, 832 P.2d 233, 235 (Colo.1992).
 
 
 9
 Our first inquiry, therefore, is whether the Colorado long-arm statute sanctions jurisdiction over the defendants. On appeal, Wenz argues that the long-arm statute provides two different bases for the exercise of personal jurisdiction--the commission of a tortious act in Colorado and the transaction of business in Colorado.
 
 A. Commission of a Tortious Act
 
 10
 The tort provision of the long-arm statute provides that, by the commission of a tortious act within Colorado, a person submits to the jurisdiction of Colorado courts concerning any cause of action arising from that act. Colo.Rev.Stat. Sec. 13-1-124(1)(b) (Supp.1994). In defining the contours of subsection (1)(b), the Colorado Supreme Court has stated that "in order to satisfy the statutory standard for assertion of long arm jurisdiction ... it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado." Classic Auto Sales, 832 P.2d at 235. Instead, Colorado courts have held that the statute may be satisfied when (1) tortious conduct occurs in Colorado, or (2) when tortious conduct initiated in another state causes injury in Colorado. See id. at 235-36. Despite Colorado's broad interpretation of subsection (1)(b), our review of Wenz's allegations, as supported by affidavits, leads us to conclude that Wenz has failed to allege or establish a prima facie case under either.
 
 
 11
 First, Wenz has failed to allege any tortious conduct occurring in Colorado. Wenz repeatedly frames the transaction at issue as one in which he voluntarily sent money to London, and then after the money was placed in his client account in London, the defendants tortiously disbursed the funds. The general allegations in Wenz's complaint explicitly provide that the "tortious conduct" complained of consisted exclusively of the defendants' "disbursement of funds ... without Mr. Wenz's knowledge, consent or authorization." See Compl. pp 14, 16, 19 (emphasis added). Additionally, each of Wenz's claims for relief-negligence, breach of fiduciary duty, breach of contract, fraud, theft--also list, as the sole basis for recovery, the defendants' wrongful disbursal of funds in the London account. See id. pp 22, 26, 30, 32, 37; see also Plaintiff's Resp. to Defs' Mot. to Dismiss at 2 (including in what plaintiff entitles the "only relevant facts" the allegation that "[t]he funds were then intentionally disbursed ... without authorization from Wenz. These intentional disbursements from Wenz' client trust account constituted not only theft of Wenz' property, but fraud upon Wenz and a breach of the fiduciary duty owed to Wenz by Connick and the Defendant law firm" (emphasis added)). Moreover, Wenz's affidavit also focuses exclusively on the defendants' lack of authorization to disburse the funds in his account. See Wenz Aff. p 8 ("At no time ... did I instruct Connick or anyone else a Memery Crystal to disburse or otherwise utilize the funds placed in my client trust account.").
 
 
 12
 Even looking at Wenz's factual allegations in the best light they demonstrate that this was a tort caused by unauthorized disbursements from a London account. Consequently, the alleged wrongful conduct--the tortious disbursal--occurred in London, not Colorado. Therefore, we conclude that Wenz has failed to allege that the defendants engaged in any tortious conduct in Colorado.
 
 
 13
 Second, not only has Wenz failed to allege any tortious conduct in Colorado, he has also failed to demonstrate that he suffered an injury in Colorado that is sufficient to invoke long-arm jurisdiction under subsection (1)(b). Not all alleged "injuries" that result from tortious conduct in a foreign state will trigger long-arm jurisdiction. See McAvoy v. District Court, 757 P.2d 633, 635 (Colo.1988). In interpreting what type of injury is sufficient under subsection (1)(b) the Colorado Supreme Court has stated that "the injury itself must have occurred in Colorado." Id. at 635. Further, the injury in Colorado "must be direct, not consequential and remote." Amax Potash Corp. v. Trans-Resources, Inc., 817 P.2d 598, 600 (Colo.Ct.App.1991). Only tortious conduct which "proximately" results in injury in Colorado constitutes a tortious act within the meaning of the long-arm statute. See Texair Flyers, Inc. v. District Court, 180 Colo. 432, 506 P.2d 367, 370 (1973). "Hence, when both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court." Amax Potash Corp., 817 P.2d at 600 (citing McAvoy v. District Court, 757 P.2d 633 (Colo.1988); Shon v. District Court, 199 Colo. 90, 605 P.2d 472 (1980)).
 
 
 14
 Accepting Wenz's allegations as true, the unauthorized disbursals occurred in London and were from a London account, not a Colorado account. Accordingly, the loss or injury occurred in London where the account was located, not in Colorado. That Wenz may be economically impacted in Colorado, simply because he lives there, is insufficient to establish personal jurisdiction under subsection (1)(b) of the Colorado long-arm statute. See McAvoy, 757 P.2d at 636 (where Colorado resident was injured in accident with Washington resident, in Washington, due to alleged negligent actions in Washington, the allegations of subsequent treatment for the injury in Colorado, and effects of the accident which were manifest in Colorado, were not sufficient to establish personal jurisdiction in Colorado under the long-arm statute); Amax Potash Corp., 817 P.2d at 600 (where both conduct and injury occur out of state, fact that plaintiff lives in Colorado and suffers economic consequences in Colorado is insufficient to confer personal jurisdiction); GCI 1985-1 LTD. v. Murray Properties Partnership, 770 F.Supp. 585, 589-90 (D.Colo.1991) (where plaintiff alleged economic injury resulting from defendant's tortious conduct in North Carolina, court responded, "the lost revenue ... injured GCI in Colorado only as a result of the fortuitous circumstance that GCI maintained its headquarters in Colorado," and concluded personal jurisdiction in Colorado not proper); Ruggieri v. General Well Serv., Inc., 535 F.Supp. 525, 536 (D.Colo.1982) (concluding personal jurisdiction in Colorado on conversion claim not proper where all of defendants actions were in Montana and "[t]he only possible damage to plaintiff was to his money that was already in Montana"). Wenz's purported economic injury in Colorado is indirect and remote. We, therefore, conclude that Wenz has failed to allege an injury in Colorado sufficient to invoke personal jurisdiction under subsection (1)(b).
 
 B. Transaction of Business
 
 15
 Although the court below, as well as the parties both below and on appeal, focused primarily on the "tortious act" provision, Wenz also claims that Colorado courts may exercise jurisdiction over the defendants pursuant to the "transaction of business" subsection of the long-arm statute. See Colo.Rev.Stat. Sec. 13-1-124(1)(a) (Supp.1992). After reviewing the pleadings and supporting affidavits, however, we are unable to find factual allegations sufficient to support Wenz's claim.
 
 
 16
 In the complaint, Wenz simply makes the allegation that "all Defendants have transacted business in the State of Colorado." Compl. p 6. The defendants then challenged this allegation in their motion to dismiss and their supporting affidavits. See Crystal Aff. pp 3-11; Connick Aff. p 4; Mem. in Supp. of Defs' Mot. to Dismiss at 3-4, 13-17. We have previously stated: "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1376 (10th Cir.1989); see Becker v. Angle, 165 F.2d 140, 141 (10th Cir.1947); see also Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir.1987) (providing that only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true).
 
 
 17
 Wenz's complaint fails to allege any facts in support of his conclusory statement that the "defendants transacted business" in Colorado. Moreover, Wenz's affidavit and response to the motion to dismiss do not contain any additional facts which would sufficiently support jurisdiction.[2] Consequently, Wenz has also failed to make a prima facie showing of personal jurisdiction under the transaction of business subsection of the long-arm statute.
 
 
 18
 Inasmuch as we have concluded that the Colorado long-arm statute cannot be used to assert jurisdiction over the defendants, we need not address whether the exercise of jurisdiction comports with due process.
 
 
 19
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Milton I. Shadur, Senior District Judge, United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Wenz filed suit in the District Court, Jefferson County, State of Colorado. The defendants removed the action to the United States District Court for the District of Colorado based on diversity of citizenship pursuant to 28 U.S.C. Sec. 1441. See Notice of Removal to Federal Court (Dec. 14, 1993); Defendants-Appellees' Motion Pursuant to 28 U.S.C. Sec. 1653 (Mar. 7, 1995)
 Any defects in defendants' Notice of Removal, raising questions as to the existence of subject matter jurisdiction, have been cured on appeal. Appellants' motion pursuant to 28 U.S.C. Sec. 1653 is GRANTED.
 
 
 [2]
 Wenz's argument is further undercut by the fact that he travelled to London on approximately November 3, 1991, just after the funds were transferred to London, and engaged in some kind of negotiations with Connick and the London investors. See Connick Aff. pp 13-14; Appellant's App. at 118. Moreover, at oral argument before the district court, Wenz's counsel conceded that these "lengthy negotiations" included discussions about the funds at issue and "what their plans were," id., but maintained that the critical point was that during these negotiations "under no circumstances did [Wenz] ever agree that one nickel of the money that he had in Memery Crystal could be released." Id. Consequently, although the context of these negotiations is contested, it appears that any dispute arose from the discussion, negotiation, or transaction that occurred in London