FILED
United States Court of Appeals
Tenth Circuit

January 28, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

AST SPORTS SCIENCE, INC.,

    Plaintiff-Appellant,

v.

CLF DISTRIBUTION LIMITED, a
British corporation; and ROBIN
HOLIDAY, a foreign citizen of the
Country of Great Britain,

    Defendants-Appellees.

No. 06-1157

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. D.C. No. 05-CV-1549-REB-CBS)**

---

David M. Miller of Kutner Miller P.C., Denver, Colorado, for Plaintiff-Appellant.

Kent E. Eichstadt of McCurdy & Eichstadt, P.C., Denver, Colorado, for
Defendants-Appellees.

---

Before **BRISCOE**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Plaintiff, AST Sports Science, Inc. (AST) sued defendants, CLF Distribution Limited (CLF) and Robin Holiday, claiming they failed to pay for products received from AST. AST alleged breach of contract, breach of implied contract, unjust enrichment, and fraud in the inducement. Defendants moved to dismiss for lack of personal jurisdiction. The district court granted the motion, and AST appeals. We reverse and remand for further proceedings.

# I

AST and CLF are in the business of selling health, nutrition, and vitamin products. AST is a Colorado corporation with its principal place of business in Golden, Colorado. Paul Delia is its president. CLF is a corporation established under the laws of Great Britain, with its principal place of business in Wiltshire, Great Britain. Robin Holiday is the president of CLF.

According to Mr. Delia's affidavit, he and Mr. Holiday first became acquainted in 1993, when they both resided in Colorado. They were both interested in motorcycle racing and frequented a track in Loveland, Colorado. The two became friends and saw each other often at motorcycle racing events. In 1996, Mr. Delia purchased a motorcycle from Mr. Holiday. In 1997, Mr. Holiday informed Mr. Delia that he was exporting motorcycles to England. Mr. Delia asserts that Mr. Holiday suggested that he could also export AST products to England and that Mr. Delia should enter into a business relationship with him to

facilitate such exportation.  Mr. Delia subsequently directed AST employees to assemble an order for Mr. Holiday and to ship it to him in Loveland, Colorado, his place of residence at the time.  Thereafter, Mr. Delia and AST began doing business with Mr. Holiday and his company, AST Sports Science Europe, which later changed its name to CLF Distribution Limited.

Mr. Holiday moved to England, allegedly in part to commence the CLF business.  Mr. Delia assisted Mr. Holiday with his move, helping him ship his belongings to England.  Among the items shipped to Mr. Holiday was a vehicle titled through the state of Colorado.  Through at least the year 2000, Mr. Holiday returned to Colorado every few months.  While in the state, he would meet with Mr. Delia, and the two would discuss business.  For example, during one such meeting in 1999, Mr. Holiday advised Mr. Delia that CLF was having trouble processing credit card orders because of the newness of his business, and he requested AST's assistance in the matter.  Mr. Delia and AST thereafter opened a bank account in Denver, Colorado for the use and benefit of Mr. Holiday and CLF.  The account was used to process credit card orders and to pay for products which were being purchased from AST.  The account was closed in 1999 by Holiday and CLF after they had established sufficient business to support an account in England.

AST and Mr. Delia claim that they entered into an Exclusive Right to Distribute Agreement ("Agreement") with CLF in 1999, executed by Mr. Holiday.

-3-

The Agreement gave CLF the exclusive right to distribute AST products in Europe, and stated that Colorado law was to govern its terms. Mr. Delia produced only an unsigned copy of the Agreement, maintaining he cannot locate the signed copy.

Orders from AST were placed by Mr. Holiday and CLF telephonically, as well as by email and facsimile. The orders were then shipped by AST directly to CLF. Payment was made by CLF to AST via check or wire transfer. On one occasion in 1999, Mr. Holiday personally picked up goods from AST in Golden. On another occasion, an agent of CLF did so.

From 1999 through 2005, AST sold products to CLF on a monthly basis. CLF placed $449,699.20 worth of orders in 1999, $988,400.25 in 2000, $996,320.87 in 2001,  $818,101.51 in 2002, $742,715.08 in 2003, $561,294.38 in 2004, and $10,803.44 in 2005. The complaint alleges CLF is indebted to AST for the principal amount of $194,259.27 for nonpayment of orders placed in 2002, 2004, and 2005.

## II

"We review de novo the district court's dismissal for lack of personal jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). Where the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503,

1505 (10th Cir. 1995).  However, in the preliminary stages of litigation, the plaintiff's burden is light.  *Doe v. Nat'l Medical Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).  Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Wenz*, 55 F.3d at 1505.  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI*, 149 F.3d at 1091. When evaluating the prima facie case, the court is bound to resolve all factual disputes in favor of the plaintiff in determining whether he has made the requisite showing.  *Wenz*, 55 F.3d at 1505.  Accordingly, we have stated the facts in that light.[1]

The Colorado Supreme Court has interpreted Colorado's long-arm statute to

---

[1]Prior to the district court's order dismissing this matter, the parties entered a  stipulation and protective order regarding potential disclosure of confidential information related to jurisdictional discovery.  When presenting the case on appeal, AST  filed a stipulated motion to seal its opening brief and appendix in order to comply with the district court's order. The clerk of the court provisionally granted the motion, leaving the ultimate decision to this panel of whether the brief and appendix would remain sealed.  We grant the motion to seal the brief and appendix.  However, we know of nothing in this opinion that would be deemed confidential.  We have recited facts only from information AST filed prior to the protective order, and which it obviously had in its possession prior to CLF's responses to AST's interrogatories and requests for production.  *See* Protective Order, Aplt. App. at 141 (excluding information obtained by AST from a source other than CLF).

extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Benton,* 375 F.3d at 1075 (referencing *Mr. Steak, Inc. v. District Court*, 574 P.2d 95, 96 (Colo. 1978)). "'This interpretation obviates the need for [a long-arm] statutory analysis separate from the due process inquiry required by *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.'" *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267, 1270 (Colo. 2002) (quoting *C.F.H. Enters., Inc. v. Heatcool*, 538 F. Supp. 774, 775 (D. Colo. 1982)). Thus, we ask whether the exercise of personal jurisdiction over Mr. Holiday and CLF comports with due process.

Our personal jurisdiction analysis involves a two-step inquiry. First, we ask whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[I]f the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113 (1987)).

### A. Minimum Contacts

Establishment of minimum contacts with the forum state requires a showing that the defendant "purposefully avail[ed] itself of the privilege of conducting

-6-

activities within the forum State. . . ." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Purposeful establishment of minimum contacts assures a reasonable expectation in the out-of-state defendant that he might be brought into court in the state where he sought to do business, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and invokes the benefits and protections of the forum state's laws, *Bennally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 625 (10th Cir. 1988). In turn, the purposeful availment requirement also ensures that a defendant will not be subject to the laws of a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (internal citations and quotation marks omitted).

The "minimum contacts" standard can be met in two ways:

> First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King* 471 U.S. at 472, 105 S.Ct. 2174 (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

*Benton*, 375 F.3d at 1075. Because we disagree with the district court's conclusions regarding the absence of specific jurisdiction, our analysis focuses there.

1. *Contract Claim*

-7-

In order to assess whether minimum contacts occurred in a contract case, we look at "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. AST argues the district court erred in failing to construe the asserted Agreement in its favor for purposes of both evidence of a contract and the minimum contacts analysis. We agree. While we are aware that Mr. Holiday claims he has never seen the Agreement, much less signed it, at this stage of the litigation we are bound to construe all contested evidence in favor of AST. *Wenz*, 55 F.3d at 1505. Citing *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371 (10th Cir. 1989), defendants nevertheless contend AST has not provided competent proof of a contract. In *Pytlik,* the Oklahoma plaintiff offered his employment contract to demonstrate the minimum contacts necessary for jurisdiction over the Italian subsidiary to whom he had been loaned. However, the contract made no reference to that particular defendant. *Id.* at 1376. The plaintiff failed to offer any additional facts to show that the Italian subsidiary had any meaningful contacts with Oklahoma. As such, we affirmed the district court's dismissal of the case. Here, on the other hand, the contract produced by AST clearly references CLF and Mr. Holiday as parties. *See* Aplt. App., vol. I., at 72. ("This Exclusive Right to Distribute Agreement . . . between AST . . .and Robin Holiday of AST Sports Science, UK, LTD . . . ."). The Agreement, which proposed terms for CLF's exclusive European distribution of AST products, also

evidences the prior negotiations and future consequences of an intended

continuing business relationship, the terms of which would be governed by

Colorado law. *Id*. at 72-73. Construing the facts in favor of AST, as we must,

the submitted Agreement attested to by the president of AST, albeit unsigned, is

prima facie evidence of a contract between AST and defendants.[2]

A contract alone does not subject a nonresident defendant to the

jurisdiction of the subject forum, *Benton*, 375 F.3d at 1077 (citing *Burger King*,

471 U.S. at 473), but AST presents several additional facts in support of

jurisdiction. Especially significant to our analysis is the fact that Mr. Holiday

approached Mr. Delia about becoming AST's European distributor, and then

formed an ongoing business relationship to facilitate the same. Phone calls,

letters, facsimiles, and emails "provide additional evidence that [the foreign

defendant] pursued a continuing business relationship with [the plaintiff]." *Pro*

*Axess v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005); *see also*

*Benton*, 375 F.3d at 1077 (correspondence exchanged is evidence of pursuit of

business relationship). These modern communications can eliminate the need for

physical presence.

> [I]t is an inescapable fact of modern commercial life that a
> substantial amount of business is transacted solely by mail and wire

---

[2]Contrary to defendants' assertion, this case is not like *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984). There, the alleged contract was proposed, executed, and to be performed in the state where the *defendants* were citizens. *Id.* at 62, 64 n.5.

communication across state lines, thus obviating the need for
physical presence within the State in which business is conducted.
So long as a commercial actor's efforts are purposefully directed
toward residents of another State, we have consistently rejected the
notion that an absence of physical contacts can defeat personal
jurisdiction there.

*Burger King*, 471 U.S. at 476.

"[W]here a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 477 U.S. at 478. In such circumstances, absent a showing that exercising jurisdiction over CLF and Mr. Holiday would "offend traditional notions of fair play and substantial justice," *Asahi*, 480 U.S. at 113 (citation omitted), [j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state. *Burger King*, 477 U.S. at 475 (quotation omitted).

Here we have Mr. Holiday's physical presence in Colorado in at least 1999. After that, the evidence clearly demonstrates — even at the motion to dismiss stage — that he continued the business relationship he began when he solicited AST's European distributorship. As is required for a finding of minimum contacts, the record reveals that the parties pursued a continuous course of dealing involving CLF placing orders to AST from England by phone, facsimile, or email. From Colorado, AST would, in turn, fill the order and ship it to

England. From England, CLF would compensate AST for the product shipped. Taken together, these circumstances constitute a business relationship, lasting over a period of seven years, that include "prior negotiations and contemplated future consequences, along with the . . . parties' actual course of dealing." *Burger King,* 471 U.S. at 479 (1985). Quite simply, defendants reached out to become AST's European distributor, the relationship was allegedly memorialized in a contract, and the relationship lasted for a over a period of seven years. It should not be a surprise to defendants that this continuing relationship and the resulting obligations to plaintiff subjects them to regulations and sanctions in Colorado for the consequences of their alleged activities. *See id.* at 473. "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been assumed." *Id.* at 474. We are persuaded that defendants' contacts with the state provided fair warning to them that they were receiving the benefits and protections of Colorado's laws and were therefore subject to be brought before its courts.

In sum, CLF's and Mr. Holiday's actions reveal that they made the minimum contacts necessary to create "continuing obligations" between themselves and AST, thereby establishing a "substantial connection" with the state of Colorado and supporting a Colorado court's exercise of personal jurisdiction over them. *See Burger King*, 471 U.S. at 475 (citation omitted). It is out of these "continuing obligations" that the alleged causes of action for breach

-11-

of contract, breach of implied contract, and unjust enrichment clearly arose. *Id.* at 476 (citation omitted).

## 2. *Tort Claim*

Plaintiffs also claim CLF and Mr. Holiday committed the tort of fraud in the inducement. Under the Colorado long arm statute, a person is subject to the jurisdiction of the courts of Colorado, "concerning any cause of action arising from [t]he commission of a tortious act within [the] state." COLO. REV. STAT. ANN. § 13-1-24 (2006). To satisfy the long arm statute, there must be a showing that the tortious action occurred within the state and that the exercise of jurisdiction over the defendant comports with due process. Here again, the "mode of analysis typically has involved two steps." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo.1992). "The first inquiry is whether the complaint alleges the commission of a tortious act within the state." *Id.* (citation and quotation omitted). Tortious act "implies the total act embodying both cause and effect." *Id.* citing *Vandermee v. District Court*, 433 P.2d 335, 337 (1967). Second, "a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws." *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1199-1200 (Colo. 2005) *(citing Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

With respect to whether the alleged tortious conduct constituted the commission of a tortious act within the State of Colorado, the district court relied

on *McAvoy v. District Court in for City of Denver*, 757 P.2d 633 (Colo. 1988), and held that the alleged tortious conduct took place in England. It concluded accordingly that it did not have jurisdiction over CLF and Mr. Holiday with respect to the fraudulent inducement claim. We read *McAvoy* differently. There, a Colorado resident was injured in an accident with a Washington resident due to alleged negligent actions in Washington. Asking Colorado to assert jurisdiction over the Washington resident, the plaintiff offered as evidence of tortious conduct in Colorado the subsequent treatment and effects of the accident which were manifested in Colorado. In these circumstances, the court held that both the tortious conduct and injury occurred in Washington, but made clear that if the tortious *injury* had occurred in Colorado, even if tortious *conduct* occurred outside of the state, the appropriate minimum contact would be established. *See id*. at 635-36. "The threshold jurisdictional requirement is established when it is demonstrated . . . 'that tortious conduct in another state ultimately caused injury in Colorado and that requiring a defense to the tort action in this state would be consistent with due process of law." *Id.* at 635 citing *Fleet Leasing, Inc. v. District Court*, 649 P.2d 1074, 1078 (Colo. 1982). Indeed, the Colorado Supreme Court has specifically cited *McAvoy* for the principle that the first prong of its long-arm jurisdiction statute is satisfied "when only the resulting injury occurs in this state." *Classic Auto Sales*, 832 P.2d at 233 (citing *McAvoy*, 757 P.2d at 635).

That is clearly what happened here. Even if the alleged fraudulent

-13-

inducement (the tortious act) occurred entirely in England, the injury occasioned by non-payment was suffered in Colorado. Given that the injury from the alleged fraud claim occurred in Colorado, the district court has jurisdiction to hear that claim in addition to the breach of contract claim, provided that exercising jurisdiction over defendants comports with due process.

## B. Whether Exercise of Jurisdiction is Reasonable

Having found sufficient minimum contacts between AST and CLF, we must still determine whether exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 113 (citation omitted). To do so "we determine 'whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case.'" *Pro Axess*, 428 F.3d at 1279 (quoting *OMI*, 149 F.3d at 1091). This requires consideration of:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1279-80. Moreover,

> [T]he analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may

-14-

serve to fortify a borderline showing of [minimum contacts].

*Id.* at 1280 (alterations in original) (quotation marks and citation omitted). We assess these factors in turn.

*1. Burden on Defendant*

In *OMI*, we noted:

> [T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction . . . . When the defendant is from another country, this concern is heightened and great care and reserve should be exercised before personal jurisdiction is exercised over the defendant.

149 F.3d at 1096 (quotation marks and citations omitted). Nevertheless, it is also true that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). *Accord Pro Axess*, 428 F.3d at 1280.

Although CLF's place of business in England is a substantial distance from Colorado, Mr. Holiday has demonstrated his ability to journey to the United States for business and pleasure. Indeed, Colorado is Mr. Holiday's former place of residence. Accordingly, forcing CLF to litigate this dispute in Colorado is neither "gravely difficult" nor sufficiently "inconvenient." *Burger King*, 471 U.S. at 478 (quotation marks and citations omitted). *See Pro Axess*, 428 F.3d at 1280.

*2. Forum State's Interest In Resolving Dispute*

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI*, 149 F.3d at 1096. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* This factor clearly favors Colorado's exercise of jurisdiction over CLF. AST is a Colorado company with its principal place of business in Colorado, and that state has an interest in providing it with a forum for its suit against CLF. *See Pro Axess*, 428 F.3d at 1280 n.7 (noting strength of this factor when a party is resident of forum state).

*3. Plaintiff's Interest in Convenient and Effective Relief*

"This factor hinges on whether the [p]laintiff may receive convenient and effective relief in another forum." *Id.* at 1281 (citation omitted). The nature of the relief that AST could receive in a British forum is complicated by the fact that it has declared bankruptcy pursuant to 11 U.S.C. § 301 *et seq.* While the bankruptcy code does provide for appointment of counsel to pursue such suits, the fee application process and its intricate rigors may make it difficult for AST to find foreign counsel familiar with the Bankruptcy Code and willing to serve on its terms. *See* 11 U.S.C. § 330; FED R. BANK. P. 2002. As it is stands now, AST's counsel for the present suit also represents AST in the bankruptcy matter. Thus, whether AST could receive convenient and effective relief by bringing suit in

England is questionable, and this factor therefore weighs in favor of Colorado's exercise of jurisdiction.

*4. Interstate Judicial System's Interest in Obtaining Efficient Resolution*

This factor asks "whether the forum state is the most efficient place to litigate the dispute." *OMI,* 149 F.3d at 1097. To answer this question, we look at the "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (citations omitted). AST and its witnesses are located in Colorado, while CLF, Mr. Holiday, and other potential witnesses are in England. It appears likely that Colorado law will govern at least the contract claim, either by virtue of the Agreement or because an implied contract was solicited and performed in Colorado. Finally, due to the bankruptcy case, piecemeal litigation would result if AST were forced to bring this suit in England. Accordingly, the most efficient place to litigate this action is Colorado.

*5. Shared Interest of the States in Furthering Fundamental Social Policies*

The fifth factor of the reasonableness inquiry "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* "'[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Id.* at 1097-98 (quoting *Asahi*, 480 U.S. at 115). Consequently, we must look closely at the extent to which an exercise of personal

jurisdiction by Colorado over CLF and Mr. Holiday would interfere with England's sovereignty. Relevant facts include "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident." *Id.* at 1098 (citations omitted). CLF is an English company, and Mr. Holiday is an English citizen, but the contract claim is not likely to be governed by English law. Additionally, CLF and Mr. Holiday chose to conduct business with AST, a resident of Colorado, and the alleged fraudulent inducement arose out of that business relationship. In these circumstances, we are not persuaded the exercise of personal jurisdiction would affect England's policy interests. *See Pro Axess*, 428 F.3d at 1281.

In sum, the five factors do not weigh in defendants' favor. CLF and Mr. Holiday have not established a "compelling case" that the exercise of jurisdiction by a Colorado court would be unreasonable. *Burger King*, 471 U.S. at 477. We accordingly conclude that Colorado's exercise of personal jurisdiction over CLF would not offend traditional notions of fair play and substantial justice. Because both prongs of the federal due process analysis are satisfied, the district court may exercise personal jurisdiction over defendants.

We **REVERSE** the district court's determination that it lacked personal jurisdiction over defendants and remand for further proceedings.