**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DORIS RACHER, SANDRA CISPER,
EARLENE ADKISSON, co-personal
representatives of the estate of Eryetha
Mayberry, deceased; JAMES
KINGSBURY, personal representative of
the estate of and next of kin to Rachel
Mary Kingsbury, deceased,

     Plaintiffs - Appellees,

v.

RON LUSK, an individual; WESTLAKE
MANAGEMENT COMPANY, a Texas
corporation,

     Defendants - Appellants,

and

WESTLAKE NURSING HOME
LIMITED PARTNERSHIP, an Oklahoma
limited partnership, formerly d/b/a Quail
Creek Nursing and Rehabilitation Center,

     Defendant.

No. 16-6055
(D.C. No. 5:13-CV-00665-M)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

In this appeal, Defendant Ron Lusk raises a single issue: whether the district court erred in concluding it had personal jurisdiction over him. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Eryetha Mayberry and Rachel Mary Kingsbury both died in residence at the Quail Creek Nursing Home in Oklahoma City (Nursing Home), which was owned by the Westlake Nursing Home Limited Partnership (the "Partnership"), an Oklahoma limited partnership. The Partnership was, in turn, owned by Westlake Management Company ("Westlake"), a Texas corporation, as its general partner and 1% owner, and Defendant Ron Lusk, a Texas resident, as its limited partner and 99% owner. Mr. Lusk is the president, director, and 100% owner of Westlake; Westlake has no other officers, directors, or agents.

Mr. Lusk was employed as the highest ranking employee of the Nursing Home, and received a salary of $291,000, which he set. In exchange for that compensation, Mr. Lusk assisted in the day-to-day operations and financial management of the Nursing Home. He also made the decision not to obtain liability insurance to cover the claims of injured residents.

James Kingsbury brought suit against the Partnership in Oklahoma state court to redress Rachel Mary Kingsbury's death. While that suit was pending, Mr. Lusk negotiated the sale of the Nursing Home for approximately $5.8 million, executed the

2

documents consummating that sale from his home in Texas, and directed that the proceeds of the sale be deposited in Westlake's Texas bank account and disbursed between Westlake and Mr. Lusk in accordance with their respective partnership shares. A jury later rendered a verdict in favor of Mr. Kingsbury and awarded him $355,484.89 (the Kingsbury Judgment). This judgment remains unpaid.

Ms. Mayberry's daughters brought suit in federal court to redress her mental and physical abuse and eventual death while in residence at the Nursing Home. They ultimately obtained a jury award of approximately $1.2 million against the Partnership and Westlake (the Mayberry Judgment).[1] Like the Kingsbury Judgment, the Mayberry Judgment has not been satisfied.

The Kingsbury and Mayberry plaintiffs later joined forces in this action, by suing Mr. Lusk and the related entities for fraudulent transfer in connection with the sale of the Nursing Home. Mr. Lusk moved to dismiss the action for lack of personal jurisdiction. Based on the pleadings and affidavits on file, the district court denied the motion. A jury then found for the plaintiffs and entered judgment against Mr. Lusk.[2] He filed this timely appeal challenging the district court's personal jurisdiction over him. Because the facts support a finding of specific personal jurisdiction, we affirm.

---

[1] Westlake's appeal of this judgment is Appeal No. 16-6011, which was argued before this court on November 16, 2016.

[2] In a related federal suit, Mr. Kingsbury asserted partnership liability against Westlake and Mr. Lusk for the judgment entered by the state court against the Partnership on the Kingsbury wrongful death case. That matter is the subject of Appeal No. 16-6087, also pending before this court.

## II

We review de novo the district court's personal jurisdiction determination, "taking as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged" in the plaintiffs' complaint. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). "We also must resolve any factual disputes in the plaintiff's favor." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Ultimately, the "plaintiff bears the burden of establishing personal jurisdiction." *Id*.

## A

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). This showing is "light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "Of course, even if personal jurisdiction is contested and found initially on the pleadings and by affidavit, it may be reviewed again at subsequent stages in the trial court proceedings as evidence accumulates." *Dudnikov*, 514 F.3d at 1069–70 n.3; *see also FDIC v. Oaklawn Apts.*, 959 F.2d 170, 174 (10th Cir. 1992) ("[W]hatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence." (internal quotation marks and alterations omitted)).

4

In response to Mr. Lusk's motion to dismiss, the plaintiffs presented the following jurisdictional facts: (1) the Partnership is based in Oklahoma, Aplt. App. Vol. 1 at 74; (2) the Nursing Home was located in Oklahoma City; (3) Mr. Lusk was listed as the registered agent for the Partnership, with an Oklahoma address identified, *id*.; (4) Mr. Lusk was a salaried employee of the Nursing Home, *id*. at 96–97; (5) Mr. Lusk was a member of the Nursing Home's governing body, "legally responsible for establishing and implementing policies regarding the management and operation" of the Nursing Home according to regulations, *id*. at 52 & n.11; (6) at the time, Mr. Lusk had other contacts with Oklahoma, including 50% ownership of a hospice enterprise, for which his designated mailing address was in Oklahoma, *id*. at 98–99; and (7) Mr. Lusk had been sued before in Oklahoma and did not claim the court was without personal jurisdiction over him.

The district court held that the plaintiffs had made a prima facie showing that the court could exercise personal jurisdiction over Mr. Lusk, "particularly specific personal jurisdiction." *Id*. Vol. 2 at 154. The court found that, in light of the purported intentionally tortious conduct, the location of the Nursing Home, and the fact that it was controlled by Mr. Lusk, both Westlake and Mr. Lusk "should have reasonably anticipated being haled into court in Oklahoma." *Id*. The court noted that Westlake and Mr. Lusk availed themselves of the benefits and protections of Oklahoma law. The court also concluded that its finding did not offend the notions of fair play and substantial justice because, among other things, Oklahoma has "an important interest in providing a forum in which its residents can seek redress for the

5

intentional injuries caused by out-of-state actors who allegedly, through a fraudulent transfer, sought to leave tort creditors without a means to collect any judgment they might obtain," and because "the states share an interest in enforcing statutes that allow tort creditors . . . to efficiently collect any judgment they might receive." *Id*. at 155.

After the jury found for plaintiffs, Mr. Lusk moved for judgment as a matter of law and again claimed the district court lacked personal jurisdiction over him. The district court denied Mr. Lusk's motion, relying on additional jurisdictional facts the plaintiffs proved at trial: (1) Mr. Lusk formed the Partnership in 1992 to acquire and manage the Nursing Home, Aplee. App. Vol. 2 at 384, 386; (2) Mr. Lusk was the highest ranking employee of the Partnership, *id*. Vol. 1 at 129; (3) Mr. Lusk managed the Nursing Home's finances and capital expenditures, *id*. at 146; (4) Mr. Lusk made or participated in the decision not to carry insurance that would have covered the plaintiffs' claims, *id*. at 19; (5) Mr. Lusk transferred the proceeds from the Nursing Home's sale to a bank account in Dallas belonging to Westlake, not the Partnership, with knowledge of the plaintiffs' claims against the Partnership, *id*. at 21, 33; and (6) after the Nursing Home's sale, Mr. Lusk, still a signator on one of the Nursing Home's bank accounts, transferred funds out of the account to himself in Dallas due to a disagreement with the buyer, *id*. at 61–62, 197–98. This appeal followed.

As an initial matter, the plaintiffs argue that Mr. Lusk "cannot appeal the trial court's finding of a prima facie case when his motion is denied and the case proceeds to trial." Response Br. at 2. In response, Mr. Lusk contends that he "is entitled on

6

appeal to review of the record made on his preliminary motion to dismiss for lack of personal jurisdiction . . . and Plaintiffs are similarly confined to that record." Reply Br. at 8. We disagree on both counts. Nothing in our precedent bars an appellant from raising an error at the motion-to-dismiss stage of the proceedings in the district court. But a personal jurisdiction ruling on pleadings and affidavits is essentially a provisional ruling under our precedent, as a plaintiff still must prove personal jurisdiction by a preponderance of the evidence by the time of trial, *see Dudnikov*, 514 F.3d at 1069 n.3; *Oaklawn*, 959 F.2d at 174. As a result, we look to the entire record to determine whether the plaintiff indeed established personal jurisdiction, including the jurisdiction facts introduced at trial. And we are not confined to the pleadings and affidavits that the district court used in making its initial determination as Mr. Lusk proposes.

**B**

Because Oklahoma's long-arm statute contemplates personal jurisdiction to the fullest constitutional extent, "the personal jurisdiction inquiry under Oklahoma law collapses into a single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In turn, we use a two-step inquiry to evaluate whether the court can exercise personal jurisdiction consistent with the due process requirements of the Fourteenth Amendment: (1) "whether the nonresident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there," and (2) "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair

7

play and substantial justice." *AST Sports Sci.*, 514 F.3d at 1057 (internal quotation

marks omitted). "Such contacts may give rise to personal jurisdiction . . . either

generally," if the contacts are so "continuous and systematic" that the non-resident

defendant may be subject to suit in any situation, or specifically, where jurisdiction is

premised on the defendant obtaining a benefit in exchange for purposeful conduct

directed at the forum state. *Shrader*, 633 F.3d at 1239. Here, the district court found

it had specific jurisdiction over Mr. Lusk.

**1**

In the specific-jurisdiction context, the minimum-contacts standard requires

that a court assert such jurisdiction "if the defendant has purposefully directed his

activities at residents of the forum, and the litigation results from alleged injuries that

arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472 (1985) (citations and internal quotation marks omitted). Not any

purposefully directed contact suffices for minimum contacts — "it is essential in each

case that there be some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws." *Id*. at 475 (internal quotation marks omitted). "[T]he

purposeful availment requirement also ensures that a defendant will not be subject to

the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated

contacts, or of the unilateral activity of another party or a third person." *AST Sports

Sci.*, 514 F.3d at 1058 (internal quotation marks omitted). Where a defendant's

intentionally tortious actions are aimed at the forum state and most of the harm is felt

8

in the forum state, minimum contacts are established. *Calder v. Jones*, 465 U.S. 783, 787–90 (1984).

We have no difficulty affirming the district court's finding that Mr. Lusk purposely availed himself of the privilege of conducting activities within the State of Oklahoma. Specifically, Mr. Lusk: (1) organized the Partnership in Oklahoma; (2) owned the controlling interest in the Partnership, which owned and operated a Nursing Home located in Oklahoma; (3) listed himself as the registered agent for the Partnership, using an Oklahoma address; (4) collected a salary from the Nursing Home as its highest ranking employee in exchange for participating in its day-to-day operations and financial management. These contacts were substantial and persistent over the course of the 21 years he managed the Partnership and Nursing Home. Furthermore, Mr. Lusk has directed the activities at residents of the State of Oklahoma and this fraudulent transfer action is the result of the injuries arising out of those activities. *See Burger King*, 471 U.S. at 479. By dispersing all of the proceeds from the sale of the Nursing Home while plaintiffs actions were pending, Mr. Lusk has left the Partnership with no assets, thereby preventing satisfaction of the Kingsbury and Mayberry Judgments entered by the Oklahoma state and federal courts against the Partnership. *See Calder*, 465 U.S. at 790 (the plaintiffs "need not go to [Texas] to seek redress from persons who, though remaining in [Texas], knowingly cause the injury in [Oklahoma]."). Mr. Lusk "deliberately reached out beyond" his home forum to conduct business in Oklahoma, and he deliberately stripped the Partnership of assets and delivered the proceeds to a Texas account to

9

deprive the plaintiffs from satisfying the judgments obtained in Oklahoma. In light of Mr. Lusk's long-term and "wide-reaching contacts" with Oklahoma via the Nursing Home, "the quality and nature of his relationship" to the Partnership in Oklahoma "can in no sense be viewed as random, fortuitous, or attenuated." *See id.* at 480 (internal quotation marks omitted).

**2**

Having found sufficient contacts between Mr. Lusk and Oklahoma, "we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *AST Sports Sci.*, 514 F.3d at 1061 (internal quotation marks omitted). "This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over defendant is reasonable in light of the circumstances surrounding the case." *Intercon*, 205 F.3d at 1247. In reaching that conclusion, we consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006) (internal quotation marks omitted). "[A]n especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (alterations and internal quotation marks omitted).

Again, we have no difficulty concluding that the district court's exercise of jurisdiction was reasonable. The burden on Mr. Lusk to appear in Oklahoma City was minimal, given that he routinely conducted business there and that Dallas is roughly 200 miles away. We agree with the district court that Oklahoma has a strong "interest in providing a forum in which its residents can seek redress for the intentional injuries caused by out-of-state actors." Aplt. App. Vol. 2 at 155. Finally, it is more efficient and just for judgment creditors such as the plaintiffs to seek collection where their judgment was obtained and not chase the defendant to another state.

We therefore AFFIRM the district court's exercise of personal jurisdiction over and entry of judgment against Mr. Lusk.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

11