95 F.3d 1156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
DANA NIGUEL BANK, Plaintiff-Appellant,
v.
Erskine BOWLES, Administrator of the Small Business
Administration and the Small Business
Administration, an agency of the
government of the United
States of America,
Defendants-Appellees.
 No. 95-55567.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 8, 1996.*
 Decided Aug. 13, 1996.
 
 Before: D.W. NELSON, T.G. NELSON and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Dana Niguel Bank (DNB) appeals the district court's grant of summary judgment to the defendants, denial of DNB's motion for summary judgment and motion to vacate summary judgment, and all of the court's other previously entered interlocutory orders and decisions. DNB also seeks attorney's fees. DNB contends that the court erred in concluding that DNB violated 13 C.F.R. § 120.201-1 and § 6 of the Loan Guaranty Agreement between DNB and the Small Business Administration (SBA). We affirm the court's judgment and deny attorney's fees to DNB.
 
 CONSENT AND ALTERATION
 
 3
 13 C.F.R. 120.201-1(a) and § 6 of the Loan Guaranty Agreement expressly prohibited DNB from making or consenting to any alteration in the terms of the loan instrument without the SBA's written consent. Likewise, without the SBA's written consent DNB could not make or consent to releases of capital having a cumulative value of over twenty percent of the original loan amount, nor could it waive any claim arising out of the loan agreement. 13 C.F.R. §§ 201-1(b), (e).
 
 
 4
 DNB has provided no evidence of the SBA's written consent to DNB's alteration of the terms of the loan instrument, release of collateral and waiver of claims. In a Revision and Extension Agreement dated January 13, 1990, DNB made a seventy-eight percent reduction of the guaranteed loan principal, from $550,000 to $120,000. On September 10, 1992, DNB released its security interest in a residence previously valued by DNB at $153,000. In the same agreement, DNB waived its claims arising out of the Alumaglass loan. Not only did DNB fail to obtain the SBA's written consent to this 1992 agreement, but DNB also failed to inform the SBA of the settlement, even in direct response to inquiries during discovery. SBA learned of the settlement only in the course of its interaction with the president of Alumaglass in preparation for the hearing in the district court.
 
 
 5
 Contrary to DNB's assertions, the SBA did not give written consent to any of DNB's actions. In the January 21, 1995 district court hearing, DNB conceded that the SBA did not sign the January 1990 settlement agreement that reduced the principal amount from $550,000 to $120,000. DNB's argument that the January 3, 1990 letter constitutes written approval is unavailing; not only is this letter merely a DNB Vice President's recollection of a conference call, but it explicitly refers to a reduction of the credit line, not the loan principal guaranteed by the SBA.
 
 
 6
 DNB's handling of this loan is the very conduct that SBA regulations attempt to forestall. DNB failed to conduct the requisite investigation of Alumaglass prior to underwriting the loan and then tried to undo the consequences of its own mistake through agreements made without the SBA's knowledge and consent. The final 1992 settlement was a model of self-dealing that extinguished claims against DNB and left the SBA without any offset to the $550,000 debt.
 
 
 7
 Because DNB violated 13 C.F.R. § 120.201-1 as well as § 6 of the Loan Guaranty Agreement, the SBA is released from its guaranty obligations. 13 C.F.R. § 120.202-5; First Interstate Bank v. Small Business Admin., 868 F.2d 340, 343-44, 346 (9th Cir.1989) (SBA justified in refusing to honor loan guaranty if bank acts without prior SBA approval).
 
 INTERLOCUTORY ORDERS AND DECISIONS
 
 8
 DNB has provided no evidence that the court abused its discretion in its interlocutory orders and decisions. Accordingly, we do not reverse them.
 
 ATTORNEY'S FEES
 
 9
 Contrary to DNB's contention, the Loan Guaranty Agreement does not provide that the SBA must pay DNB's attorney's fees occasioned by DNB's failure to adhere to the Loan Guaranty Agreement. As with its forfeit of the loan guaranty, DNB must bear the legal expenses occasioned by its own misconduct.
 
 
 10
 AFFIRMED. ATTORNEY'S FEES DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3