PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DENTAL DYNAMICS, LLC, an
Oklahoma limited liability company,

        Plaintiff - Appellant,

v.

JOLLY DENTAL GROUP, LLC, an
Arkansas limited liability company,
doing business as Jolly Family
Dentistry; SCOTT D. JOLLY, DDS,
an individual,

        Defendants - Appellees.

No. 18-6107

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:17-CV-01216-M)**

---

Anthony W. Billings (Kevin R. Donelson and Socorro A. Dooley on the brief),
Fellers, Snider, Blankenship, Bailey & Tippens, P.C., Oklahoma City, Oklahoma,
for Appellant.

George S. Freedman, Spencer Fane LLP (Sarah R. Clutts, Spencer Fane LLP, and
Lance B. Phillips, Phillips Law Office, with him on the brief), Oklahoma City,
Oklahoma, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

This case presents a question of personal jurisdiction. Namely, whether a federal court sitting in Oklahoma has specific personal jurisdiction over Dr. Scott Jolly—a dentist and Arkansas resident—and the limited liability company through which he runs his dentistry practice, Jolly Dental Group, LLC. The plaintiff below, Dental Dynamics, LLC, argues that three isolated business interactions and an allegedly fraudulent contract suffice to establish federal court jurisdiction over its breach of contract and fraud claims.

We disagree. With respect to Dental Dynamics's breach of contract claim, Jolly Dental's contacts with Oklahoma are too random, fortuitous, and attenuated to establish personal jurisdiction there. With respect to Dental Dynamics's fraud claim, we conclude that Dental Dynamics fails to show Dr. Jolly's allegedly tortious conduct sufficiently targeted Oklahoma to establish personal jurisdiction there. Accordingly, we AFFIRM the district court's dismissal of Dental Dynamics's claims for lack of personal jurisdiction.

## I. Background

Dental Dynamics is an Oklahoma entity with its principal place of business in Oklahoma. Kellie Haller is Dental Dynamics's sole member and manager. Dental Dynamics specializes in brokering transactions involving pre-owned dental equipment between dentists across the United States. For any particular sale,

"Dental Dynamics purchases the dental equipment directly from the seller dentist and resells the equipment to the buyer dentist." App. at 37.

Dr. Jolly is a dentist residing in Arkansas and is the owner, manager, or member of Jolly Dental—an Arkansas entity with its principal place of business in North Little Rock, Arkansas. Dr. Jolly operates his dentistry practice through Jolly Dental.

Since 2008, Dr. Jolly has inquired into prospective business transactions with Dental Dynamics on three occasions. First, in 2008, Dr. Jolly contacted Dental Dynamics regarding the potential sale of a pre-owned piece of equipment he owned. Haller informed Dr. Jolly that she could not sell the machine. Next, in May 2017, Dr. Jolly engaged Dental Dynamics to broker the sale of a 2014 Planmex Promax MID X-Ray Unit (X-Ray unit) that is the subject of the present lawsuit. Third, in June 2017, Dr. Jolly contacted Dental Dynamics regarding the purchase of a separate X-Ray unit. Jolly Dental paid Dental Dynamics the purchase price for this unit. But after a defect was discovered with the machine, Dental Dynamics returned the purchase price to Jolly Dental.[1] The parties prepared and executed these transactions through telephonic, email, and text communications.

---

[1] The record is silent on whether the X-Ray unit involved in the June 2017 transaction was ever shipped to Jolly Dental.

Dental Dynamics's present claims arise out of the second transaction. On or around May 20, 2017, Dental Dynamics secured the sale of the X-Ray unit from Jolly Dental to Dr. Joiner, a dentist practicing in California. On May 26, 2017, Jolly Dental, through Dr. Jolly, executed a bill of sale selling the X-Ray unit to Dental Dynamics. The bill of sale represents that the X-Ray unit is in "perfect working condition" and that the sale includes the X-Ray unit's hardware, software, manuals, and "all accessories and any other items pertaining" to the X-Ray unit. *Id.* at 14–15. The negotiations pertaining to the bill of sale were conducted through text messages and email. To pay for the X-Ray unit and associated items, "Dr. Joiner tendered the sales price to Dental Dynamics in Oklahoma, and Dental Dynamics subsequently mailed a check . . . to Dr. Jolly." *Id.* at 36.

The bill of sale notes that "disassembly, packaging, and shipment" would be handled by an independent support company. *Id.* at 14. Dental Dynamics does not dispute that the X-Ray unit was shipped directly from Dr. Jolly's offices in Arkansas to Dr. Joiner's offices in California without ever entering Oklahoma. After receipt of the X-Ray unit, Dr. Joiner discovered that it was not in perfect working condition as represented. Due to certain defects and missing hardware and software, the X-Ray unit Dr. Joiner received was "worthless" in that it would

"cost more to repair than to purchase a brand new [unit]." *Id.* at 9–10. Dr. Joiner notified Dental Dynamics of the X-Ray unit's unsatisfactory condition.

In turn, Dental Dynamics brought the present action in federal court in Oklahoma, alleging breach of contract against Jolly Dental and fraud against Dr. Jolly. Dental Dynamics alleges Jolly Dental breached its contractual obligations outlined in the bill of sale by "failing to properly disassemble and crate the X-Ray Unit; failing to provide the software and computer hardware required . . . and materially misrepresenting the condition of the X-Ray Unit." *Id.* at 10. With respect to its fraud allegations, Dental Dynamics alleges Dr. Jolly knowingly made false representations regarding the X-Ray unit's condition and his intention to satisfactorily disassemble and crate the X-Ray unit to induce Dental Dynamics to secure the sale of the unit.

In response, Dr. Jolly and Jolly Dental (together Jolly Dental) moved to dismiss the action for lack of specific personal jurisdiction. Jolly Dental argues it lacks the requisite minimum contacts with Oklahoma to establish jurisdiction and that, even if the minimum contacts test is satisfied, exercising jurisdiction would be unreasonable.

The district court granted Jolly Dental's motion, holding Dental Dynamics failed to establish specific personal jurisdiction over either its breach of contract or fraud claim. Dental Dynamics appealed, contending both that the district court

erred in concluding it lacked personal jurisdiction over Jolly Dental and, in the alternative, that the district court should have at least granted limited discovery on the jurisdictional issues prior to dismissal.

## II. Analysis

Before discussing the merits, we explain the standard of review on appeal and the applicable legal framework.

### A. Standard of Review

We review dismissals for lack of personal jurisdiction de novo. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Dental Dynamics, as the plaintiff below, bears the burden of establishing personal jurisdiction. *See id.* Where, as here, a complaint is dismissed at the preliminary motion to dismiss stage based only upon the complaint and accompanying affidavits, Dental Dynamics need only make a prima facie showing of personal jurisdiction. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). Dental Dynamics must make this showing with respect to each of the claims alleged. *See* 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1069.7 (4th ed. 2015) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts."). Dental Dynamics may make this showing through affidavits or other written materials. *See AST Sports Sci.,*

*Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). At this stage, all factual disputes are resolved in Dental Dynamics's favor. *See Old Republic*, 877 F.3d at 903. Conclusory allegations, however, need not be credited by this court and "will not suffice to defeat a Fed. R. Civ. P. 12(b) motion." *Dudnikov*, 514 F.3d at 1073.

### B. Legal Framework

#### 1. Personal Jurisdiction

To show personal jurisdiction over a nonresident in a diversity action, Dental Dynamics must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Walden v. Fiore*, 571 U.S. 277, 282 (2014); Fed. R. Civ. P. 4(k)(1)(A).[2] This requires us to focus on state law, and particularly, the relevant state's long-arm statute. That statute establishes the extent to which the state intends its courts to exercise jurisdiction over nonresidents. Oklahoma's long-arm statute authorizes courts to

---

[2] A defendant's contacts with the forum state may give rise to two variants of personal jurisdiction: general or specific. *See Old Republic*, 877 F.3d at 903. General personal jurisdiction means a court may exercise jurisdiction over an out-of-state party for any purpose. *Id.* Specific personal jurisdiction means a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state. *Id.* at 904; *see also Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). Dental Dynamics asserts specific personal jurisdiction is the variant "principally at issue." Aplt. Br. at 6. Because Dental Dynamics advances no arguments in favor of general personal jurisdiction, we treat specific personal jurisdiction as the *only* variant at issue.

"exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla. Stat. Ann., tit. 12, § 2004(F). Neither party raises any objection based on the Oklahoma constitution. Accordingly, the analysis collapses into a single due process inquiry. *See Old Republic*, 877 F.3d at 903; *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

The Due Process Clause authorizes personal jurisdiction if two elements are met. First, a defendant must have "purposefully established minimum contacts within the forum state." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

### a. Minimum Contacts

The minimum contacts test for specific personal jurisdiction has two requirements: (1) a defendant must have "purposefully directed its activities at residents of the forum state,"[3] and (2) the plaintiff's injuries must arise out of the defendant's forum-related activities. *Old Republic*, 877 F.3d at 904. With respect to the first requirement, purposeful direction ensures that defendants will

---

[3] The "purposeful direction" prong of the minimum contacts test is sometimes referred to as the "purposeful availment" prong. *See, e.g.*, *Dudnikov*, 514 F.3d at 1071 (noting the interchangeability of these terms).

not be haled into court in foreign jurisdictions solely as a result of "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. The mere foreseeability of causing injury in another state is insufficient on its own to establish purposeful direction. *See Old Republic*, 877 F.3d at 905.

With respect to the second requirement, ensuring the injury arises out of a defendant's forum related activities makes sure an adequate connection exists between the forum and the underlying controversy. *See id.* at 908.

### b. *Fair Play and Substantial Justice*

If the minimum contacts test is met, we must then assess whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. *See id.* at 909. To do so, we consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *See id.*; *see also Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005).

Defendant's showing under these factors operates on a "sliding scale." *AST Sports Sci.*, 514 F.3d at 1061. The weaker a plaintiff's showing with respect to

minimum contacts, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.*

## C. Application

We first address Dental Dynamics's claims with respect to personal jurisdiction and then turn to its request for additional discovery.

### 1. Personal Jurisdiction

We conclude Dental Dynamics fails to establish jurisdiction over either claim because it cannot satisfy the purposeful direction prong of the minimum contacts test.[4]  Additionally, we find that it would not be reasonable to assert jurisdiction even were the minimum contacts test satisfied.

#### a. Breach of Contract Claim

Analyzing purposeful direction with respect to Dental Dynamics's breach of contract claim requires us to look to Jolly Dental's continuing "relationships with the forum state and its residents." *Old Republic*, 877 F.3d at 905; *see also Burger King*, 471 U.S. at 472.  Although contractual obligations may create sufficient ties to establish jurisdiction, an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction.  *See Burger King*, 471 U.S. at 478; *Benton v. Cameco Corp.*, 375

---

[4] Jolly Dental does not meaningfully dispute that the "arising out of" prong of the minimum contacts test is satisfied.  Accordingly, we do not address that prong here.

F.3d 1070, 1077 (10th Cir. 2004). In *Burger King*, the Supreme Court eschewed such "mechanical" tests in favor of looking to the "business negotiations," "future consequences" of the contract, and the "actual course of dealing" between the parties. *Burger King*, 471 U.S. at 478–79.

Here, the record shows that the parties' entire business relationship comprises three transactions over nine years. None of these transactions was negotiated or executed in person. Each transaction was a discrete occurrence, unrelated to the others in any meaningful way. On only two occasions did the parties reach an agreement, and only once—in the transaction subject to this lawsuit—was that agreement substantially performed.

These contacts are insufficient to show purposeful direction. Each transaction concerned the isolated sale or prospective sale of a piece of dental equipment without any long-term or continuing obligations involving Oklahoma. *See Old Republic,* 877 F.3d at 910 (finding no purposeful direction even where a contract with a forum-state entity was accompanied by the parties' contemplation of "some potentially ongoing consequences" because the record lacked evidence of "any significant course of dealing" or long-term contractual commitments associated with the forum state). Moreover, the transactions implicated Oklahoma in only an attenuated fashion, as Dental Dynamics serves as a broker in transactions between dentists located across the United States. *See C5 Med.*

*Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1325 (10th Cir. 2019) (holding no purposeful direction established where a party attended numerous trade shows in the forum state, but the location was selected by a third-party).

Dental Dynamics analogizes to *Burger King*, but the comparison confirms no purposeful direction exists here. In *Burger King*, the Supreme Court found minimal contacts satisfied due to a heavily negotiated and "carefully structured" 20-year franchise agreement that "envisioned continuing and wide-reaching contacts" with the forum state. 471 U.S. at 478–80. But in this case none of *Burger King*'s persuasive factors are present. The primary contract that Dental Dynamics relies on is a two-page bill of sale negotiated over email that envisions no enduring relationship between the parties and concerns only the sale of a single piece of equipment that never physically passed through the forum state.

Dental Dynamics also urges personal jurisdiction is warranted in light of the parties' "ongoing business" relations and Jolly Dental's "substantial connection" with Oklahoma. *See* App. at 37 (averring that "Dental Dynamics and Dr. Jolly and [Jolly Dental], by and through Dr. Jolly, were engaged in a business relationship since approximately 2008"). Such conclusory allegations are insufficient to establish jurisdiction. *See Dudnikov*, 514 F.3d at 1073. Nor does the allegation that "Dr. Jolly and Ms. Haller exchanged text messages many times" suffice. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir.

-12-

1988) ("Ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity.'" (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985))).

In sum, the contemplated and executed business transactions between the parties are too attenuated to demonstrate Jolly Dental established sufficient minimum contacts with Oklahoma.

### b. *Fraud Claim*

When analyzing tort-based claims such as Dental Dynamics's fraud claim, we look to "the harmful effects [of Dr. Jolly's conduct] in the forum state" to assess purposeful direction. *Old Republic*, 877 F.3d at 905. Purposeful direction in this context has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state. *See Newsome*, 722 F.3d at 1264–65; *see also Dudnikov*, 514 F.3d at 1072.

This framework for analyzing personal jurisdiction in the intentional tort context stems originally from the Supreme Court's decision in *Calder v. Jones*. 465 U.S. 783, 790 (1984) (holding personal jurisdiction in California proper in a libel suit by a California resident against a Florida reporter). In *Walden v. Fiore*, the Supreme Court elaborated on its holding in *Calder*. *See* 571 U.S. 277, 286–91 (2014). In *Walden*, a DEA agent in Georgia stopped two Nevadans who claimed

to be professional gamblers returning home with approximately $97,000 in cash winnings. The DEA agent seized the currency and drafted an affidavit in conjunction with the forfeiture proceedings. The Nevadans filed suit in federal court in Nevada alleging that the DEA agent tortiously drafted a false affidavit. A divided Ninth Circuit held personal jurisdiction existed under *Calder* and its progeny because the DEA agent "expressly aimed" his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a significant connection to Nevada. *See id.* at 282.

The Supreme Court reversed. In doing so, the Court clarified that knowledge of an alleged victim's out-of-state status, standing alone, cannot confer personal jurisdiction over a defendant engaging in allegedly tortious activity. The Court reiterated that the focus of the personal jurisdiction analysis is on the defendant's relationship with the forum state, even in the intentional tort context. *See id.* at 282–83 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Subsequent case law from this court confirms a defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction. *See Rockwood Select Asset Fund XI (6)-1, LLC v. Devine*, 750 F.3d 1178, 1180 (10th Cir. 2014) (holding alleged falsehoods in an opinion letter sent from an out-of-state law firm defendant to a plaintiff in the forum state failed to

-14-

establish jurisdiction); *see also Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) ("*Walden* teaches that personal jurisdiction cannot be based on interactions with a plaintiff known to bear a strong connection to the forum state." (quoting *Rockwood*, 750 F.3d at 1180)); *C5 Med. Werks*, 937 F.3d at 1324 ("[M]erely interacting with a plaintiff known to bear a strong connection to the forum state is not enough to establish jurisdiction." (internal quotation marks and citation omitted)).

These principles dictate the outcome here. As discussed above, Dental Dynamics fails to show Dr. Jolly had any connections with Oklahoma outside of the allegedly fraudulent misrepresentations and isolated incidents of outreach to Dental Dynamics. These communications into the forum-state are insufficient to establish Dr. Jolly "expressly aimed" his allegedly tortious misrepresentations at Oklahoma. *See Rockwood*, 750 F.3d at 1180. Nor does the fact that Dr. Jolly knew Dental Dynamics was an Oklahoma entity change this analysis. *See C5 Med. Werks*, 937 F.3d at 1324.

Dental Dynamics relies on two of our cases decided before *Walden*, but neither is applicable. In *Newsome*, this court held personal jurisdiction existed where Oklahoma, the forum state, was the "focal point" of the alleged tort. Moreover, the defendants in *Newsome* had greater contacts with the forum state than Dr. Jolly here. For instance, the defendants had ongoing managerial duties

with respect to a company conducting business in the forum state and several had traveled to the forum state. *Newsome*, 722 F.3d at 1262–63.

Similarly, in *Dudnikov*, we held personal jurisdiction existed in Colorado over an out-of-state company that sought to shut down an online auction a Colorado company was holding. *See* 514 F.3d 1063, 1070 (10th Cir. 2008). Unlike the conduct in *Dudnikov*, the allegedly tortious conduct here is only incidental to the forum state. Taking Dental Dynamics's allegations as true, we can at most conclude Dr. Jolly intentionally misrepresented the working condition of the X-Ray unit to effectuate a sale to Dr. Joiner in California. The X-Ray unit never passed through Oklahoma and the only effects felt in Oklahoma arose from the incidental fact that the broker—Dental Dynamics—was located there.

Such incidental connections are insufficient to establish personal jurisdiction.

### c. *Fair Play and Substantial Justice*

Finally, even if the minimum contacts test were satisfied, we find the exercise of personal jurisdiction would not comport with traditional notions of fair play and substantial justice.

Looking first to the burden of mounting an out-of-state defense, we find this factor weighs in Jolly Dental's favor. Defending an action in Oklahoma despite having no business dealings, property, or offices there is burdensome. *See*

*Medberg v. Goins, Rash & Cain, Inc.*, No. 15-CV-0054, 2015 WL 3486617, at *17 (N.D. Okla. June 2, 2015).

The second factor—Oklahoma's interest in adjudicating the dispute—is a closer question. Oklahoma undoubtedly has an interest in providing residents with a convenient forum for redressing grievances. Here that interest may be mitigated because at least the breach of contract claim would likely be governed by Arkansas law.[5] *See id.* at *18.

The third factor is not well addressed by the parties. Presumably Dental Dynamics has an interest in receiving convenient relief in Oklahoma. Dental Dynamics has failed, however, to put forward evidence indicating that litigating this action in a separate forum, such as Arkansas, would practically foreclose pursuit of the lawsuit. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1097 (10th Cir. 1998).

---

[5] Under Oklahoma law, a "contract is to be interpreted according to the law and usage of the place where it is performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15 § 162. With respect to performance, the bill of sale requires certain elements including "disassembly, packaging, and shipment" to occur in Arkansas. App. at 14–15. With respect to the contract's creation, certain elements occurred in Oklahoma and certain elements occurred in Arkansas. *Id.* at 38. Dental Dynamics presents no argument that the breach of contract claim would be subject to Oklahoma, as opposed to Arkansas, law. Accordingly, without deciding the choice-of-law question, we find the potential application of Arkansas law mitigates, to some degree, Oklahoma's otherwise present interest in providing a convenient forum for relief.

The fourth factor, the judicial system's interests, weighs slightly in favor of Jolly Dental as the majority of parties, witnesses, and evidence exists outside of Oklahoma. *See id.*

The final factor is neutral as neither party advances any fundamental social policies weighing in their favor.

Taken together, these considerations weigh in Jolly Dental's favor, especially considering the lesser showing required in light of Dental Dynamics's inability to establish minimum contacts. *See AST Sports Sci.*, 514 F.3d at 1061. It is unreasonable to require Jolly Dental to defend an action in Oklahoma where the central allegations concern the sale and shipment of equipment from Arkansas to California. This holds especially where Dental Dynamics has failed to show any hardship associated with pursuing this litigation in a more sensible forum.

### 2. *Dental Dynamics's Discovery Request*

Dental Dynamics contends, in the alternative, that even if the present evidence is insufficient to establish personal jurisdiction, it should have been permitted to supplement the record with limited discovery in lieu of having its claims dismissed. We see no merit in this argument.

District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues. *See Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975).

Denials of discovery requests are accordingly reviewed for abuse of discretion. *See id.* A district court abuses its discretion in denying a jurisdictional discovery request where the denial prejudices the party seeking discovery. *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). Prejudice exists where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Sizova*, 282 F.3d at 1326 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). The party seeking discovery bears the burden of showing prejudice. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010).

Dental Dynamics fails to carry its burden with respect to showing prejudice. Dental Dynamics points to no relevant facts in dispute. Instead, Dental Dynamics seeks additional discovery based only on speculation that "[l]imited discovery on . . . [Jolly Dental's] business relationship would likely aid Dental Dynamics in establishing personal jurisdiction." Aplt. Br. at 23. As we and others have held, pure speculation as to the existence of helpful facts is insufficient, as a matter of law, to constitute the type of prejudice that warrants reversing the district court in the area of discovery management. *See Breakthrough Mgmt. Grp.*, 629 F.3d at 1189–90 (citing with approval *Boschetto v.*

*Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding the district court's denial of a request for jurisdictional discovery was not an abuse of discretion where the request was based on "little more than a hunch that it might yield jurisdictionally relevant facts")); *Dutcher v. Matheson*, 840 F.3d at 1195; *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1536 (S.D.N.Y. 1983) (denying jurisdictional discovery based on "mere speculation" that jurisdictionally relevant facts existed).

Accordingly, we cannot say the district court abused its discretion by denying Dental Dynamics's request for additional discovery.

## III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.