**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERRENCE M. WYLES,

    Plaintiff - Appellant,

v.

THOMAS D. BRADY, a/k/a Tom Brady,

    Defendant - Appellee,

and

ALLEN ZACHARY SUSSMAN; LOEB &
LOEB LLP; ALUMINAID
INTERNATIONAL, A.G.; WEST HILLS
RESEARCH & DEVELOPMENT, INC.,
f/k/a/ Aluminaid, Inc.; ALUMINAID PTE
LTD., a/k/a Advanced First Aid Research
PTE LTD; CARL J. FREER; JAMES
JOHN HUNT; ADAM FREER, a/k/a
Adam Agerstam; JULIA FREER-
AGERSTAM, a/k/a Julia Freer, a/k/a Julia
Agerstam; DAVID ANDREW
WARNOCK; ALEX ARENDT; JOE
MARTEN,

    Defendants.

No. 19-1142
(D.C. No. 1:17-CV-01868-RBJ)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral

_____

Before **BRISCOE**, **EBEL**, and **LUCERO**, Circuit Judges.
_____

Terrence Wyles appeals the district court's (1) dismissal of his claims against Thomas Brady due to the absence of personal jurisdiction, (2) jurisdictional discovery order, and (3) award of attorney fees to Brady. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

This appeal stems from Wyles' suit against his former employer, Aluminaid, Inc.; a related company, Aluminaid International, A.G.; the law firm that represented them; and associated individuals. Wyles alleges that after he was hired, he discovered that Carl Freer—Aluminaid, Inc.'s chief executive officer—and others were misappropriating and embezzling corporate funds. He unsuccessfully tried to bring this alleged misconduct to the company's attention and was subsequently fired.

Following these events, Aluminaid, Inc.—which originally did business in Colorado—relocated to California and changed its name to West Hills Research & Development, Inc. ("West Hills").[1] It then sued Wyles in California state court, alleging fraud and misappropriation of trade secrets. Wyles, in turn, sued Aluminaid, Freer, and

_____

estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We refer to Aluminaid, Inc.; Aluminaid International, A.G.; and West Hills collectively as "Aluminaid."

2

others in Colorado state court and Colorado federal court, asserting essentially the same claims against the same group of defendants in both courts. The federal district court dismissed Wyles' claims on grounds of improper claim splitting, but we vacated the dismissal order and remanded for further proceedings. See Wyles v. Sussman, 661 F. App'x 548 (2016) (unpublished). On remand, the parties stipulated to the dismissal of the case without prejudice.

Wyles brought the present case after West Hills' California state-court lawsuit was dismissed. Alleging claims of malicious prosecution, outrageous conduct, and joint liability, he sued the same group of defendants as in the previous lawsuits, with the addition of Joseph Marten and Thomas Brady. Wyles also filed an identical suit in federal court in California.

This appeal concerns only defendant Brady. Wyles alleges that Brady, a retired firefighter from Los Angeles, was a member of Aluminaid's "Advisory Board" from 2012 until at least 2015. According to Wyles, Aluminaid included Brady's photo in its business plan and identified him as its "Executive Vice President Gov't Affairs." Brady disputes that he held this position but admits he advised and consulted Aluminaid regarding emergency burn relief services. Additionally, Wyles alleges that Brady called him regarding Wyles' misappropriation and embezzlement accusations and used this call to support false attestations in an affidavit filed in West Hills' California case.

Contending that these facts were insufficient to establish personal jurisdiction, Brady moved to dismiss Wyles' claims against him. Upon Wyles' motion, the district court permitted limited jurisdictional discovery. Because Wyles' subsequent discovery

3

requests exceeded the order's limits, however, the court held an evidentiary hearing and ordered defendants to provide specified written discovery.[2]

After discovery was completed, the court concluded that Brady, who lives in California, did not have minimum contacts with the state of Colorado. It therefore granted Brady's motion to dismiss for lack of personal jurisdiction, and Brady moved for an award of attorney fees under Colo. Rev. Stat. § 13-17-201. The court granted that motion as well. Wyles appealed.

## II

We begin by addressing the district court's order dismissing Wyles' claims against Brady for lack of personal jurisdiction. We review the court's legal determinations underlying such a dismissal de novo and its factual determinations for clear error. See Monge v. RG Petro-Mach. (Grp.) Co. LTD, 701 F.3d 598, 613 (10th Cir. 2012).

When the district court has held an evidentiary hearing on the matter, a plaintiff requesting the exercise of personal jurisdiction over a defendant must show by a preponderance of the evidence "that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[3] Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153,

---

[2] Brady filed an affidavit in this case regarding his contacts with Wyles and the state of Colorado. After the district court noted factual discrepancies between Brady's affidavit and evidence adduced at the hearing, Brady filed a notice of filing of an amended affidavit.

[3] Wyles mistakenly identifies the requisite showing as a prima facie showing. A plaintiff need only make a prima facie showing when the defendant's motion to

4

1159 (10th Cir. 2010) (quotation omitted).  Because Colorado's "long-arm" statute confers jurisdiction to the extent it is permitted by constitutional due process, see Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1193 (Colo. 2005), we proceed directly to the constitutional inquiry.

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting Int'l Shoe Co. v. State of Wash. Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)).  "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."  Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 903 (10th Cir. 2017).  Because Wyles has not argued that the court has general jurisdiction over Brady, we address only whether the court has specific jurisdiction.

"[T]he minimum contacts test for specific jurisdiction encompasses two distinct requirements:  first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise

_____

dismiss "is decided on the basis of affidavits and other written materials."  Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992).  But if, as in this case, "the district court holds a pretrial evidentiary hearing to resolve factual disputes relating to jurisdictional questions, the plaintiff has the burden to prove facts supporting jurisdiction by a preponderance of the evidence."  Id.

5

out of [the] defendant's forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011) (quotation omitted). Once a plaintiff has established minimum contacts, a defendant may respond by showing that the exercise of jurisdiction would be unreasonable. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (listing reasonableness factors).

Wyles argues that personal jurisdiction may be exercised over Brady because (1) Brady was employed by Aluminaid, and (2) Brady "took action designed to cause harm in Colorado" when he called Wyles. To the extent Wyles argues that Brady's employment relationship with Aluminaid renders Brady subject to personal jurisdiction in Colorado, we disagree. The district court found that Brady's relationship with Aluminaid began after Aluminaid relocated to California. We conclude that this factual finding is not clearly erroneous. See Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998) ("A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." (quotation omitted)). At best, Wyles has pointed to conflicting evidence in the record of a potential overlap of a few months between the beginning of Brady's association with Aluminaid and its relocation to California. For example, Wyles argued before the district court that Brady "knew [Aluminaid] was a company that had its roots in Colorado" when he became an officer. However, he also repeatedly acknowledged that Brady's involvement with Aluminaid began after it relocated to California, noting that Brady "was on the board of a company that had been a Colorado company" and that by the time Brady "became an officer of the

6

company, [it] had begun to move to California." This evidence, to the extent it is conflicting, does not demonstrate that the district court's finding was "without factual support in the record or . . . a definite . . . mistake." Id.

Wyles also argues that the court has personal jurisdiction over Brady because by telephoning Wyles, Brady took action designed to cause harm in Colorado. Specifically, Wyles argues that Brady knew he was a Colorado resident and that the harm Brady would cause "would be suffered by [him] in Colorado." In support, Wyles primarily relies on Calder v. Jones, 465 U.S. 783 (1984), an intentional-tort case in which the Supreme Court held that personal jurisdiction was properly exercised in California in a libel suit brought by a California resident against a Florida reporter based on the effects of the alleged tortious conduct in California. See id. at 788-89. The Court reasoned that personal jurisdiction was proper because "[t]he allegedly libelous story concerned the California activities of a California resident . . . whose television career was centered in California," "[t]he article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." Id. In other words, the defendant's actions were purposefully directed at California, the forum state. See Walden v. Fiore, 571 U.S. 277, 288 n.7 (2014).

Wyles' reliance on Calder is unavailing. "Purposeful direction" in the intentional-tort context "has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." Dental Dynamics, LLC v. Jolly Dental Grp., LLC, 946 F.3d 1223, 1231

7

(10th Cir. 2020) (emphasis added).  As the Supreme Court cautioned in <u>Walden</u>, a "plaintiff cannot be the only link between the defendant and the forum."  571 U.S. at 285.  "[A] defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction" without additional contacts between the defendant and the forum state.  <u>Dental Dynamics</u>, 946 F.3d at 1231.

Such additional contacts are lacking in this case.  Wyles has not demonstrated that the only act arguably intended to cause harm in Colorado—Brady's call—was directed at the forum state (as opposed to merely at the plaintiff in the forum state) or caused any harm to him in Colorado.  <u>Walden</u>, 571 U.S. at 283-84 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.  For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." (quotation omitted)).  In this case, "there is no indication that [Colorado] had anything but a fortuitous role" in the commission of the alleged tort.  <u>Far W. Cap., Inc. v. Towne</u>, 46 F.3d 1071, 1080 (10th Cir. 1995).

Moreover, "the mere foreseeability of causing injury in another state is not a sufficient benchmark for exercising personal jurisdiction."  <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1534 (10th Cir. 1996) (quotation omitted).  It is not enough that Brady knew Wyles would be in Colorado when he called him.  "Rather, the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  <u>Id.</u> (quotation and alteration omitted).  We conclude that Brady took no

8

action that would reasonably lead him to believe he would be haled into court in Colorado. By placing a single phone call to Wyles, Brady did not purposefully avail himself "of the privilege of conducting activities within the forum state" in which Wyles happened to be. Hanson v. Denckla, 357 U.S. 235, 253 (1958) (quotation omitted); see also Treierweiler, 90 F.3d at 1534 (concluding that defendant's call to plaintiff's attorney in the forum state did not support the exercise of personal jurisdiction); Dental Dynamics, 946 F.3d at 1231 (exchange of text messages insufficient to confer personal jurisdiction); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1418-19 (10th Cir. 1988) ("[O]rdinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity." (quotation omitted)).

Thus, we conclude that Wyles has not demonstrated the existence of minimum contacts between Brady and the state of Colorado. We therefore affirm the district court's dismissal of Wyles' claims against Brady for lack of personal jurisdiction.[4]

## III

Wyles argues that the district court erred in limiting discovery. We review the denial or limiting of discovery related to jurisdiction for an abuse of discretion. See Budde v. Ling-Temco-Vought, Inc., 511 F.2d 1033, 1035 (10th Cir. 1975). We "will not interfere with the trial court's exercise of its discretion to control its docket and dispatch

---

[4] Because we hold that Wyles has not demonstrated minimum contacts, we need not address the reasonableness of exercising jurisdiction. See Burger King Corp., 471 U.S. at 477.

9

its business except upon the clearest showing that the procedures have resulted in actual and substantial prejudice" to the plaintiff. Id. (quotation and alteration omitted).

The court initially permitted Wyles (1) to submit five requests for production and five interrogatories to Brady and to another defendant and (2) to obtain depositions from Brady and another defendant. Wyles disregarded these limits, filing broad requests that sought information above and beyond the jurisdictional question.[5] After the court learned of Wyles' requests, it limited discovery to written confirmation of the positions that Brady held at Aluminaid.

We cannot say that the court abused its discretion in further limiting discovery. "[A] refusal to grant jurisdictional discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant and that prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1189 (10th Cir. 2010) (quotation and alterations omitted). Wyles has failed to convince us that he was prejudiced by the court's orders. Without citation to the record, Wyles argues that he has shown facts challenging Brady's characterization of his relationship with Aluminaid and of the phone call Brady made to Wyles. But Wyles makes no argument regarding the additional facts his requested discovery would have revealed. Accordingly, we hold that the court did not abuse its discretion in further limiting discovery.

---

[5] We note that Wyles makes no argument on appeal challenging the district court's characterization of his discovery requests as overbroad and irrelevant.

10

## IV

We turn to the court's award of attorney fees to Brady. We review the factual findings underlying an attorney fee award for abuse of discretion and the legal conclusions supporting the award de novo. Jones v. Denver Post Corp., 203 F.3d 748, 756 (10th Cir. 2000).

Colorado's attorney fee statute, § 13-17-201, is substantive law of the forum state that this court applies when our jurisdiction is based on diversity. Id. at 757. It provides:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

§ 13-17 201. Although the statute only explicitly refers to Colorado Rule of Civil Procedure 12(b), we have interpreted it as applying to dismissals under Federal Rule of Civil Procedure 12(b). See Jones, 205 F.3d at 757 n.6.

Attorney-fee awards under the statute are mandatory. Crandall v. City of Denver, 238 P.3d 659, 660 (Colo. 2010). Under § 13-17-201, a court must award reasonable attorney fees to a defendant prevailing in a tort action on a Rule 12(b) motion. See Jones, 205 F.3d at 757. Accordingly, Brady was entitled to the reasonable attorney fees he incurred defending against Wyles' action.

Wyles argues that § 13-17-201 does not apply in this case because Brady amended his affidavit following the evidentiary hearing. But the Colorado Supreme Court has explicitly held that awards under § 13-17-201 are mandatory, see Crandall, 238 P.3d at

11

665, and we are unconvinced that it would read any exception into the statute, let alone

Wyles' suggested exception.[6]  Wyles' only cited case to support his proffered exception,

Bank v. Bowles, 95 F.3d 1156 (9th Cir. 1996) (table) (unpublished), held that under the

terms of the contract at issue, a party who failed to adhere to the contract was not entitled

to attorney fees incurred by its own breach.  Id. at *2.  We fail to see how this case is

relevant, particularly where, as here, the fee award is mandated by statute.

For these reasons, we conclude that the district court did not abuse its discretion in

awarding attorney fees to Brady.

V

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero<br>Circuit Judge

---

[6] In Employers Insurance of Wausau v. RREEF USA Fund-II (Colorado), Inc., 805 P.2d 1186 (Colo. App. 1991), the Colorado Court of Appeals recognized a single exception to the mandatory nature of § 13-17-201:  cases in which the plaintiff voluntarily consented to dismissal by conceding the defendant's Rule 12(b) motion. Id. at 1188.  The court held that the Colorado legislature did not intend § 13-17-201 to apply to a situation in which a plaintiff concedes the motion "in such a manner that defendant is not required to expend additional efforts beyond the filing of its motion."  Id.  The Colorado Supreme Court has declined to rule on the validity of that exception.  See Crandall, 238 P.3d at 665.  But even if we were to accept the exception, it would not apply in this case.  Not only did Wyles not dismiss his claims against Brady, but Brady was forced to file a reply in district court and incur the expenses of this appeal.